**Harold Westcom v. Robert E. Meunier and Lisa M. (McMillan) Meunier**

[674 A.2d 1267]

No. 93-559

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 12, 1996

*William T. Counos, II,* of *Kissane, Yarnell & Cronin,* St. Albans, for Plaintiff-Appellant.

*Robert B. Luce* and *Kevin P. Moriarty* of *Downs Rachlin & Martin,* Burlington, for Defendants-Appellees.

**Gibson, J.** Plaintiff Harold Westcom appeals a jury verdict in favor of defendants Robert and Lisa Meunier in a negligence action in

Franklin Superior Court. The jury found the Meuniers not liable for injuries plaintiff received when the Meuniers' vehicle struck his car from behind. On appeal, plaintiff claims the trial court erred in denying him his sixth peremptory challenge and in instructing the jury on the sudden emergency doctrine. Because we agree that the court should have allowed plaintiff to exercise a sixth peremptory challenge, we reverse.

Plaintiff sued defendants for negligent driving, alleging that Robert Meunier had failed to stop his vehicle during a heavy snowfall and had struck plaintiff's vehicle from behind, causing permanent physical injuries to plaintiff. Defendants asserted that the circumstances of the collision demonstrated a sudden emergency that relieved them of liability for plaintiff's injuries. Plaintiff's claims were tried before a jury in Franklin Superior Court.

During juror voir dire, the parties exercised their peremptory challenges in alternating order, with plaintiff's counsel challenging first, then defendants' counsel, then plaintiff's counsel, and so on. The parties proceeded in this manner until each side had exhausted five peremptory challenges. On his next turn, plaintiff's counsel attempted to pass, which prompted the following exchange with the court:

MR. COUNOS: If we pass, your Honor.

THE COURT: That's lost.

MR. COUNOS: It's lost.

THE COURT: Yes. Then I would have just said one two three four five six is all gone. *None left.*

MR. COUNOS: Okay. Pass.

(Emphasis added.)

Defendants' counsel then exercised his sixth peremptory challenge, and the court replaced the challenged panel member. With the new member now on the panel, plaintiff's counsel attempted to exercise his sixth peremptory challenge. The record shows the following exchange:

MR. COUNOS: Your Honor, for the record I made five challenges and would like to exercise my sixth challenge.

THE COURT: Okay. But as of course I said once passed

forever lost. As I understand it you're just making a record.

MR. COUNOS: Right.

With the jury panel thus constituted, the court administered the jury oath, and the trial proceeded to a defense verdict.

■ Vermont recognizes the right to exercise peremptory challenges both by statute and by rule. 12 V.S.A. § 1941; V.R.C.P. 47(c). Long ago, this Court noted that the opportunity "to assert and exercise the right of challenge given [a party] by the statute, is, no doubt, essential to the full enjoyment of [that party's] right to a jury trial." *State v. Mercier*, 98 Vt. 368, 371, 127 A. 715, 716 (1925). For over a century, we have consistently held that "the right to peremptorily challenge jurors given by [statute] continues until the jurors are sworn." *State v. Spaulding*, 60 Vt. 228, 233, 14 A. 769, 771 (1887). More recently, we stated that "[i]f another party changes the composition of that panel by challenge, the first party of course has a *new* opportunity to challenge, if he wishes." *Masterson v. State*, 139 Vt. 106, 107, 423 A.2d 845, 846 (1980) (emphasis added). Under our longstanding precedents, the trial court should have granted plaintiff's request to exercise a sixth peremptory challenge after defendants had changed the composition of the panel; the court's failure to do so was error requiring reversal.

■ Defendants contend, however, that plaintiff waived his right to a sixth peremptory challenge by passing after exercising his fifth peremptory challenge. We disagree. A pass does not constitute a waiver until the jurors are sworn.* See, e.g., *State v. Berry*, 267 N.E.2d 775, 778 (Ohio 1971) (rejecting argument "that once a party 'passed' his alternate turn to peremptory challenge, the right could not thereafter be resurrected, even to challenge a newly seated juror"). Defendants advocate the rule, accepted in some jurisdictions,

---

*The dissent by Justice Morse assumes, without further analysis, that our decision "makes it easier for a party to pack a jury based on invidious discrimination." 164 Vt. at 542, 674 A.2d at 1271. Although the dissent's assumption may once have had force, the long line of United States Supreme Court decisions cited by the dissent squarely resolves the dissent's concern. See, e.g., *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 146, 114 S. Ct. 1419, 1430 (1994) (prohibiting jury selection based on gender); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 628 (1991) (prohibiting jury selection based on race). We need no longer assume that peremptory challenges will be used for invidious discrimination, because the Court's decisions assure that peremptory challenges cannot constitutionally be so used.

that a venire member cannot be challenged peremptorily as a matter of right after being accepted by the challenging party. See *Walczak v. Daniel*, 172 A.2d 915, 917 (Conn. 1961) (party has no right to peremptory challenge after he has accepted juror upon conclusion of his examination); see generally Annotation, *Peremptory Challenge After Acceptance of Juror*, 3 A.L.R.2d 499, 501-04 (1949) (collecting cases). Such a rule, which we reject, would be a marked departure from the well-established practice in the Vermont trial courts. Cf. Annot., *supra*, 3 A.L.R.2d at 504-08 (collecting cases from states, including Vermont, following rule that accepted juror may be challenged peremptorily until juror or jury is sworn to try case).

Defendants also contend that plaintiff has not shown how he was prejudiced by the denial of a sixth peremptory challenge. We recently held that a party need not show actual prejudice when the trial court erroneously denies a party's request to exclude a juror by peremptory challenge. *State v. Santelli*, 159 Vt. 442, 446, 621 A.2d 222, 224-25 (1992). In *Santelli*, we wrote, "If we were to accept the actual prejudice rule, the trial court's errors would become unreviewable because the focus of the appellate inquiry would not be on the court's error, but on the qualifications of the juror subject to the lost peremptory challenge." *Id.* The whole purpose of peremptory challenges is to allow each party an opportunity to dismiss a fixed number of jurors without cause or explanation. *Id.* The faulty denial of that opportunity creates prejudice that should need no elucidation. See *id.* at 446-47, 621 A.2d at 225.

Plaintiff was entitled to exercise his sixth peremptory challenge before the jury was impaneled. Any other rule invites the use of stratagems to disrupt the fair and orderly selection of a panel to which the parties do not object. See *Masterson*, 139 Vt. at 107, 423 A.2d at 846.

Because plaintiff should not have had to proceed with the jury as impaneled, we need not reach the remaining issues raised on appeal.

*Reversed and remanded.*

**Allen, C.J.,** dissenting. While I agree that the majority holding is in accord with our past precedents, I also believe that it will, in the words of *Masterson*, "invite the use of stratagems designed to defeat the fair balance of the rule." *Masterson v. State*, 139 Vt. 106, 107, 423 A.2d 845, 846 (1980). Adherence to a rule that permits peremptory challenges until the jury is sworn will permit a party to "pass,"

"waive," or remain "content," while the opponent exhausts all peremptory challenges and then alter the composition of up to one-half the jury panel. I agree with Justice Morse and a majority of federal courts that, at the least, a pass should result in forfeit of a challenge. I would go one step further and forbid "back-strikes" altogether in the absence of something to suggest that the competency of a juror underwent any change after acceptance.

Applying these views to the facts presented requires an affirmance of the trial court's initial ruling that a pass would result in the loss of the last peremptory challenge, unless that challenge was to the replacement resulting from the defendants' last challenge. *United States v. Echavarria-Olarte*, 904 F.2d 1391, 1395 (9th Cir. 1990) (acceptance of panel cannot be deemed waiver of peremptory challenge in respect of person who was not member of panel at time jury was accepted). Because plaintiff failed to direct his challenge to the replacement juror, I would affirm on the jury issue.

**Morse, J.,** dissenting. The Court today perpetuates the exercise of peremptory challenges in the manner of another era, over a century ago, when practice in our courts was more like a gentlemen's game than the "just, speedy, and inexpensive determination of every action" contemplated by our modern rules of civil procedure. V.R.C.P. 1. The Court's decision runs counter to V.R.C.P. 47(c) governing jury selection and the growing trend to discourage the practice of packing a jury. I respectfully dissent.

## I.

Contrary to its assertion, the Court is not required by any case precedent in Vermont to reach its result. The Court relies on dictum in *Masterson v. State*: "If another party changes the composition of that panel by challenge, the first party of course has a new opportunity to challenge . . . ." 139 Vt. 106, 107, 423 A.2d 845, 846 (1980) (per curiam). This dictum is based on old Vermont case law which holds that, until the jury is sworn, a party may use peremptory challenges to remove any juror, even one that was previously accepted. *State v. Mercier*, 98 Vt. 368, 371, 127 A. 715, 716 (1925); *State v. Spaulding*, 60 Vt. 228, 233, 14 A. 769, 771 (1887). This practice, however, well predates, and was significantly refined by, V.R.C.P. 47(c)(2), which states, "In any action in which there are two parties, peremptory challenges shall be exercised one by one, alternatively [sic], with the plaintiff exercising the first challenge."

The holding of *Masterson*, in contrast to the dictum, is as follows: "When a panel of twelve jurors is presented to a party and he makes no challenge to that panel, he accepts it, unless some special circumstance becomes apparent justifying a trial court to permit him to withdraw the acceptance." *Masterson*, 139 Vt. at 107, 423 A.2d at 846. This holding, not dictum based on outdated case law, governs this case. Plaintiff here accepted the twelve-juror panel. We should follow common sense and the lead of Maine law, upon which V.R.C.P. is based. See Reporter's Notes, V.R.C.P. 47 (Vermont Rule 47 is based in relevant part on Maine Rule 47); *State v. Lizotte*, 249 A.2d 874, 878 (Me. 1969).

The circumstances in *Lizotte* were as follows: after exercising two challenges, the defendant indicated that when the vacancies were filled he might wish to challenge one of the original twelve venire members. The court advised him that "any challenges not then made to those among the twelve first drawn would not thereafter be allowed." *Id.* at 876. The defense objected to that procedure but then exercised two more peremptory challenges. Subsequently, after the vacancies were filled, and the State passed, the defense challenged one of the original twelve. The court denied this challenge. Thus, though filling the vacancies changed the composition of the panel, the defendant was allowed to challenge only the new jurors, not the original ones. The court's ruling was affirmed on appeal because "[t]here [was] nothing to suggest that the competency of [any of the original jurors] underwent any change during the minutes between the Court's warning and the time the deferred challenge was offered." *Id.* at 878. The rule the court interpreted in *Lizotte*, Me.R.Crim.P. 24(c), is virtually identical to V.R.C.P. 47, as is the relevant language of Me.R.Civ.P. 47(c)(2).[1]

According to this rule, plaintiff was eligible to challenge only the newly appointed juror. He did not do so. His cryptic creation of a record did not include any reason for his objection. He did not indicate that his objection was grounded on a change in jury composition or that the new juror was unsatisfactory. His remarks were oriented solely toward creating an issue for appeal rather than to pointing out prejudicial error to the court. I would affirm on that basis.

---

[1] Indeed, it is evident that V.R.C.P. 47(c) was based directly on these Maine Rules, because all three share the same error — each mistakenly uses "alternatively" instead of "alternately."

Furthermore, although the issue need not be reached, I believe that allowing a party to pass without forfeiting a challenge is a violation of the express language of Rule 47(c)(2). As I have previously noted, V.R.C.P. 47(c)(2) requires that "peremptory challenges shall be exercised one by one," alternately. *Masterson*, 139 Vt. at 107, 423 A.2d at 846. This requirement entails not only the obligation to exercise a challenge in turn, but also the right to have your opponent exercise his peremptory challenge in the prescribed order. The Court's holding skews the rule by permitting a party to skip a turn and allow an opponent to challenge twice in a row. The express language of the rule, however, treats a pass as an exercise of one challenge. See *Carr v. Watts*, 597 F.2d 830, 832 (2d Cir. 1979) (common practice in federal courts to treat pass as waiver of one challenge). Otherwise, as in this case, the parties are not exercising challenges "one by one, alternat[]ely."

The Court's interpretation also makes it easier for a party to pack a jury based on invidious discrimination. See *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 146, 114 S. Ct. 1419, 1430 (1994) (peremptory challenges may not be used to exclude jurors solely on basis of gender); *Georgia v. McCollum*, 505 U.S. 42, 59 (1992) (criminal defendant may not exercise peremptory challenges to exclude jurors solely on basis of race); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 628 (1991) (private litigant in civil action may not use peremptory challenges to exclude jurors solely on basis of race): *Batson v. Kentucky*, 476 U.S. 79, 84 (1986) (State may not use peremptory challenges to exclude jurors solely on basis of race). The very peremptory nature of the peremptory challenge makes prohibited discrimination hard to detect. Permitting the accrual of challenges makes it possible for a party to pass until his opponent's challenges are exhausted and, thereafter, to make a series of challenges, filling the jury with people having a certain desired characteristic.

## II.

Because I would affirm on the first issue, I will address the other issue raised by plaintiff. Plaintiff contends that a jury instruction on the sudden emergency doctrine should not have been given. The instruction related to the following fact pattern: During a heavy snowfall, plaintiff exited from the northbound lane of Interstate 89 at St. Albans. The exit ramp falls in a descending curve and crosses underneath the Interstate. Plaintiff came to a stop behind a snowplow in the middle of the exit ramp. From points higher up, this section of

the road is obscured by rock outcroppings that line both sides of the ramp.

Defendant exited the Interstate, following plaintiff, and slowed to a speed of approximately ten to fifteen miles per hour. Upon noticing that a car had gone off the road, he slowed further to a speed he estimated to be eight miles per hour. When he saw the vehicles ahead of him, from a distance of approximately 175 feet, he took his foot off the gas pedal. A few moments later he realized that the vehicles were not moving and applied his brakes, but he was unable to stop before hitting the rear of plaintiff's car.

The court instructed the jury as follows:

The law recognizes that an otherwise careful person, when faced with unexpected danger, may fail to use his best judgement or may not choose the best method of dealing with the situation. He will not be found negligent if he acted as other careful persons would in facing what reasonably appeared to be an emergency. He will not be found negligent even if injury resulted from his actions.

The Defendant must prove by a preponderance of the evidence that there reasonably appeared to be a sudden emergency, that the emergency was not of Defendant's own making (that is, he was not operating carelessly or too fast for the road conditions), and that a careful person would have reacted like he did in dealing with the emergency.

Plaintiff argues that the accident was a consequence of defendant's negligence and, therefore, no emergency existed as a matter of law, and that the instruction was prejudicial and should not have been given. The jury, however, had a straightforward question to answer; did defendant driver reasonably react to the blocked highway on a snowy day? Driving conditions and visibility were poor. The plow and plaintiff's car were in the middle of an exit ramp — hardly a typical place to stop — and defendant initially did not see that the vehicles ahead of him were stationary. By the time defendant realized that the car and plow ahead of him were not moving, there was little opportunity for thoughtful deliberation. The instruction on sudden emergency did not distract the jury from the question of negligence. Nothing in the instruction was a misstatement of the applicable law. The facts did not rule out a sudden emergency. "Suddenness" of the appearance of the danger and precautionary measures (defensive driving techniques) were all considerations of fact for the jury.

Throughout its history the sudden emergency doctrine has served largely to complicate the judicial task and create unnecessary fodder for appeals; parties appeal whether the instruction is given[2] or not.[3] I agree with *Dunleavy v. Miller*, 862 P.2d 1212 (N.M. 1993), that instructing a jury on the sudden emergency doctrine is redundant, and therefore, unnecessary.

> The instruction is unnecessary because the standard of care is adequately stated in [the ordinary negligence charge] — that is, the care a reasonably prudent person would use in the conduct of the person's own affairs, considered in light of all the surrounding circumstances. If one of the circumstances affecting the actor's conduct is the presence of an emergency limiting time for reflection on the wisest course of action, then that fact can and should be brought to the jury's attention by counsel.

*Id.* at 1218.

Moreover, the sudden emergency doctrine is really not a "doctrine," that is, "a principle of law." Webster's New Collegiate Dictionary 336 (1977). It is, rather, an observation about human nature; a person facing *sudden* danger is ordinarily not as collected as he would otherwise be. Such a statement of common sense need not be included in instructions to a jury. Observations about human behavior, as they arguably apply to the facts of a case, belong in closing arguments.

---

[2] See *Newkirk v. Towsley*, 134 Vt. 237, 238, 357 A.2d 117, 118 (1976) (instruction on sudden emergency doctrine appealed); *Melford v. S.V. Rossi Construction Co.*, 131 Vt. 219, 228, 303 A.2d 146, 150-51 (1973) (same); *Sheldon v. Brooks*, 130 Vt. 95, 96, 286 A.2d 889, 889 (1971) (same); *Connor v. McGill*, 127 Vt. 19, 21-22, 238 A.2d 777, 779-80 (1968) (same); *Hebert v. Stanley*, 124 Vt. 205, 208-09, 201 A.2d 698, 701 (1964) (same); *Ryalls v. Smith*, 124 Vt. 14, 17-18, 196 A.2d 494, 496 (1963) (same); *Slate v. Hogback Mountain Ski Lift*, 122 Vt. 8, 11, 163 A.2d 851, 854 (1960) (same); *Gregoire v. Willett*, 110 Vt. 459, 464, 8 A.2d 660, 662-63 (1939) (same); *Luce v. Chandler*, 109 Vt. 275, 281-82, 195 A. 246, 248-49 (1937) (same) *Healy, Admr. v. Moore*, 108 Vt. 324, 339-40, 187 A. 679, 686 (1936) (same); *Mattison v. Smalley*, 122 Vt. 113, 119, 165 A.2d 343, 348 (1960) (wording of instruction on sudden emergency doctrine appealed).

[3] See *Girroir v. Carpenter*, 136 Vt. 290, 292, 388 A.2d 831, 833 (1978) (failure to charge on sudden emergency doctrine appealed); *State v. Graves*, 119 Vt. 205, 213-14, 122 A.2d 840, 846 (1956) (same); *Kremer v. Fortin*, 119 Vt. 1, 7, 117 A.2d 245, 249 (1955) (same); *Chamberlain v. Delphia*, 118 Vt. 193, 195-96, 103 A.2d 94, 95 (1954) (same); *Paquin v. St. Johnsbury Trucking Co.*, 116 Vt. 466, 474, 78 A.2d 683, 688 (1951) (same); *French v. Nelson*, 111 Vt. 386, 389-90, 17 A.2d 323, 324 (1941) (same); *Rich v. Hall*, 107 Vt. 455, 461, 181 A. 113, 115-16 (1935) (same); *Steele v. Fuller*, 104 Vt. 303, 310, 158 A. 666, 668-69 (1932) (same); *Landry v. Hubert*, 100 Vt. 268, 280-82, 137 A. 97, 102-03 (1927) (same).

The sudden emergency doctrine, as a jury instruction, should be avoided, because it does not enhance the jury's ability to decide the merits of a claim of negligence.